IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | §   Criminal No. **3:24-CR-148-L** |
| | § |
| **BENJAMIN MARTINEZ** | § |

### MEMORANDUM OPINION AND ORDER

Before the court is Defendant Benjamin Martinez's ("Defendant" or "Mr. Martinez") Motion to Dismiss Indictment ("Motion") (Doc. 17), filed on August 9, 2024. Defendant seeks dismissal of Count One of the Indictment, which charges him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and contends that § 922(g)(1) is unconstitutional on its face and as applied to him. He, therefore, contends that the statute violates (1) the Second Amendment to the United States Constitution in light of the Supreme Court's decision *in New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and (2) the Commerce Clause of the United States Constitution. The Government opposes the Motion. After careful review of the Motion, Government's response, and applicable law, the court **denies** Defendant's Motion for the reasons herein explained.

I.  **Background**

On April 16, 2024, the Government filed a one-count Indictment (Doc. 1) against Mr. Martinez that charged him with knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense, while knowingly possessing a firearm in and affecting interstate and foreign commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

Memorandum Opinion and Order – Page 1

Mr. Martinez has several prior felonies. In 2005, Mr. Martinez received deferred adjudication for "Assault Caus[ing] Bodily Injury Family Violence," a third-degree felony. Doc 17-1 at 10. In 2009, he was convicted of "Evading Arrest with a Vehicle," a felony. *Id.* at 13. In 2017, he was convicted of aggravated robbery, a first-degree felony. *Id.* at 22. Further, he also had been convicted of several misdemeanors between the years 2002 and 2023. These offenses, however, are not considered in the court's "as-applied" analysis.

## II.     Legal Standard

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A court may grant a motion to dismiss an indictment if the defect is essentially a question of law. *United States v. Banks*, 339 F.3d 267, 269 (5th Cir. 2003). Motions to dismiss that test the interpretation of a statute are such questions of law that are proper for the court to review. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) ("The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper.") (citation omitted).

Mr. Martinez contends that § 922(g)(1) is unconstitutional on its face and as applied to him. Litigants are permitted to raise both "as applied" and "facial" challenges, but the "lawfulness of the particular application of the law should ordinarily be decided first." *Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) (citation omitted). "Once a case is brought," however, "no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases*." Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010) (citation omitted).

"As applied" challenges require the court to determine whether the law or act may constitutionally be applied to some and be applied unconstitutionally to others. *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973). In a facial challenge, a defendant must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This challenge is the most difficult to mount successfully. *Id.* To prevail, the Government must establish that the challenged law "imposes a comparable burden on the right of armed self-defense" to that imposed by a historically recognized regulation. *Bruen,* 597 U.S. at 3.

### III.   Analysis

Section 922(g)(1) provides:

> It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition [that] has been shipped or transported in interstate or foreign commerce.

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. In *Heller,* the Court held that the Second Amendment protected an individual's right to keep and bear arms and that a Washington D.C. law that prohibited possession of handguns in the home was unconstitutional. *District of Columbia v. Heller,* 554 U.S. 570 (2008). The Court relied on the text and meaning of the words in the Second Amendment based on history. *Id.* at 593. The Court *did not* call into question prohibitions against persons who are felons or "mentally deficient." *Id.* at 626. Two years following *Heller*, the Court struck down city ordinances that banned handguns and held that the Second Amendment applied to states and was incorporated by the Fourteenth Amendment. *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010).

In June 2022, the Supreme Court struck down New York's concealed carry licensing law because it was an unconstitutional infringement on Second Amendment guarantees. *New York State Rifle & Pistol Ass'n Inc. v. Bruen,* 597 U.S. 1 (2022). The Court created a new framework in *Bruen*. Under this framework, the first step requires courts to look at the text. *Id.* at 24. Second, the court must determine whether the Government has met its burden of "justifying that the regulation is consistent with the Nation's historical tradition of firearm regulation." *Id.* It is only after both prongs are satisfied that a court may conclude that an "individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*

Applying the framework to the New York law, the Court held that the plain text of the Second Amendment protects carrying handguns publicly for self-defense. *Id.* at 32. For the second prong, the Court held that the State of New York had not met its burden to show that the law was consistent with the Nation's history. *Id.* In support of the historical analysis, New York submitted a "variety of historical sources," which the Court categorized in periods categorized as "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries." *Id.* at 34. The Court held that this was necessary because "not all history is created equal." *Id.* After reviewing these "periods," the Court was not convinced that there was a tradition of broadly prohibiting the use of handguns in public.

After applying the new test created by the Court, the Fifth Circuit initially held that 18 U.S.C. § 922(g)(8) violated the Second Amendment to the Constitution. *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023), *rev'd*, 144 S. Ct. 1889 (2024). The panel held that the historical analogues were not relevantly "similar to" § 922(g)(8). *Id.* at 456. The Court reversed. *Rahimi,* 144 S. Ct. at 1903. The Court held that the Government had met its burden by showing history in which

Government regulations barred people from misusing weapons to "harm or menace" others. *Id.* The Court further held that history, traditions, and "common sense" supported disarming threatening individuals. *Id.* at 1901. The Court concluded that 922(g) (8) fit within the well-established tradition of this Nation. *Id.* at 1897.

### IV.     Application to Mr. Martinez

A. <u>Section 922(g)(1) is Constitutional as Applied.</u>

Mr. Martinez contends that the Government cannot "beat the heavy burden of establishing" that § 922(g)(1) is consistent with this nation's tradition of regulating firearms. Def.'s Mot. 4. He contends that the constitutionality of this provision remains an open question after *Bruen*. *Id.* at 2. Mr. Martinez relies on non-binding cases contending that the court should not have to sift through historical materials to determine the constitutionality of § 922(g)(1), nor should it allow the Government to discharge its burden by allowing it to refer to a historical analogue that is vaguely similar to the challenged restriction. *Id.* at 10 (citation omitted). The court disagrees with Mr. Martinez.

Applying the *Bruen* two-step framework, the court must examine the plain text of the statute, which the Court and Fifth Circuit have held that the Second Amendment covers the conduct prohibited by § 922(g)(1). *United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024) (citation omitted). Next, the court must determine if the Government has met its burden of demonstrating that § 922(g)(1), as applied to Mr. Martinez, has a historical analogue. *Bruen,* 597 U.S. at 30. The evidence need not be a "historical twin." It does, however, need to be "relevantly similar" to the challenged law. *Id.* The Government provides two types of historical laws that it believes are relevant: "(1) laws authorizing capital punishment and estate forfeiture for felons; and (2) laws

disarming those deemed untrustworthy based on lack of adherence to the rule of law." Gov.'s Resp. 8.

First, the Government cites history that shows felonies were punished by forfeiture of land and personal property. *See* 4 William Blackstone, *Commentaries on the Laws of England* 95 (1st ed. 1769); Beth A. Colgan, *Reviving the Excessive Fines Clause*, 102 Cal. L. Rev. 277, 322 & nn.275-276 (2014) (citing statutes); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) at 664-65 (1886); 9 William Waller Hening, Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature 302 (1821); 2 Statutes at Large of Pennsylvania from 1682 to 1801 at 12 (1896); 1 The Laws of Maryland[,] With the Charter, The Bill of Rights, the Constitution of the State, and its Alterations, The Declaration of Independence, and the Constitution of the United States, and its Amendments 79 (1811); and Acts and Laws of The English Colony of Rhode Island and Providence-Plantations in New-England in America 33-34 (1767).

Next, the Government cites historical laws that categorically disqualify individuals from possessing firearms because they were deemed untrustworthy. *See* 1 W. & M., Sess. 1, ch. 15, 6 Statutes of the Realm 71; 7 Statutes at Large; Being A Collection of All the Laws of Virginia 35-36 (1820) (1756 law); Public Records of the Colony of Connecticut 193 (1890) (1775 law); 5 The Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 479 (1886) (1776 law); 7 Records of the Colony of Rhode Island and Providence Plantations, in New England 567 (1776 law); 1 The Public Acts of the General Assembly of North Carolina 231 (1804) (1777 law); 9 Statutes at Large; Being A Collection of All the Laws of Virginia 282 (1821) (1777 law); Rutgers, New Jersey Session Laws Online, Acts of the General Assembly of the State of New-Jersey 90 (1777 law); and 9 Statutes at Large of Pennsylvania 348 (1779 law).

Because modern circumstances differ from history, the court must balance the two and determine not only whether the history is similar but also must determine why and how the prohibition burdens the Second Amendment right. *Rahimi,* 144 S. Ct. at 1898. As the Government correctly explains, the "why" of these laws was to protect society, punish offenders, and deter repeat offenders. *See* Gov.'s Resp. 16. The precursor to § 922(g)(1) was the 1968 Gun Control Act, which was enacted to "bar possession of a firearm from persons whose prior behaviors have established their violent tendencies." 114 Cong. Rec. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana). Similarly, the justification for § 922(g)(1) is to deter violent individuals from possessing a firearm and ensure law and order. The "how" or the vehicle in which the lawmakers achieved their historical objectives was by permanently punishing offenders. As the Government shows, individuals who were found guilty of robbery could be liable to "suffer death" or forfeit their property. Gov.'s Resp. 9. Disarmament of felons, as used in § 922(g)(1), is a much lower punishment than death. Permanent disarmament under § 922(g)(1) does not punish individuals "to an extent beyond what was done at the founding." *Rahimi,* 144 S. Ct. at 1898.

These historical analogues support the permanent disarmament of Mr. Martinez. He contends that the Second Amendment does not support a lifetime firearm ban as applied to him because his criminal history does not suggest that he poses a credible threat. Def.'s Mot. 17 (citing *Rahimi,* 144 S. Ct. at 1898). The court is not persuaded by this argument.

"For the purposes of assessing [Mr. Martinez's] predicate offenses under § 922(g)(1), [the court] may consider prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *Diaz,* 116 F.4th at 467 (citing § 922(g)(1)). Mr. Martinez has some misdemeanor convictions, but as previously noted, the court does not consider them in reaching its decision. As stated earlier, Mr. Martinez has prior felonies. In 2005, he received deferred adjudication for

**Memorandum Opinion and Order – Page 7**

"Assault Caus[ing] Bodily Injury Family Violence," a third-degree felony. Doc 17-1 at 10. In 2009, he was convicted of "Evading Arrest with a Vehicle," a felony. *Id.* at 13. In 2017, he was convicted of aggravated robbery, a first-degree felony. Mr. Martinez's history demonstrates his violent past. The court is convinced that Mr. Martinez's record demonstrates that he represents a "credible threat to the physical safety of another," and § 922(g)(1) is not unconstitutional as applied to him. *Rahimi*, 144 S. Ct. at 1898.

    B. Section 922(g)(1) Is Constitutional on Its Face.

Mr. Martinez challenges § 922(g)(1) on its face. To prevail, "the Government need only demonstrate that § 922(g)(8) is constitutional in some of its applications." *Rahimi,* 144 S. Ct. at 1898. The Fifth Circuit has foreclosed facial challenges to § 922(g)(1) constitutional challenges. *See Diaz*, 116 F.4th at 467. Additionally, Defendant fails to show that "no set of circumstances" exists in which this law can be applied without violating the Second Amendment. *Bucklew v. Precythe,* 587 U.S. 119 (2019). The Government need not justify its reasoning with historical analysis because as explained earlier, the statute is constitutional as applied to Mr. Martinez.

    C. This Court Is Bound by Circuit Precedent.

Even if the court were inclined to deviate from precedent, which it *does not* do, *Bruen* has done little to change the outcome of a § 922(g)(1) claim. Nothing in the Court's recent cases has unequivocally overruled its decision in *Heller,* which permits restrictions on firearm use for felons or mentally deficient persons. *See United States v. Petras,* 879 F.3d 155, 164 (5th Cir. 2018) (the Fifth Circuit held that the Court's decision "must unequivocally overrule prior precedent . . . .").

Further, Mr. Martinez's challenge is foreclosed by the Fifth Circuit precedent. In *Diaz,* for the first time since *Bruen,* the Fifth Circuit applied the historical inquiry as required by *Bruen* in analyzing the constitutionality of § 922(g)(1). *Diaz,* 116 F.4th at 467. The panel presented the

**Memorandum Opinion and Order – Page 8**

dispositive question of whether "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" Diaz. *Id.* It held that §922(g)(1) is constitutional as applied when the punishment for the crime in question has a historical analogue. *Id.* The panel held that permanently disarming Diaz fit within the tradition of regulating firearms. *Id.* at 472. Similarly, Mr. Martinez's applied challenge fails because, as stated earlier, permanent disarmament for the crimes he committed is supported by historical analogues, and thus, his challenge is foreclosed. For the reasons stated, Mr. Martinez's arguments fail because this court is bound by precedent.

D. <u>Defendant's Commerce Clause Challenge Is Foreclosed.</u>

Mr. Martinez correctly states that the Commerce Clause arguments are foreclosed (Doc. 17). The Fifth Circuit has consistently rejected Commerce Clause arguments. *See*, e.g., *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013); *United States v. Nichols*, 2022 WL 5401942, at *1 (5th Cir. Oct. 6, 2022) (per curiam), *cert. denied*, 143 S. Ct. 827 (2023).

Mr. Martinez's argument fails, and his Motion is therefore **denied.**

V. Conclusion

Because the text and history support the disarmament of felons, the court determines that 18 U.S.C. § 922(g)(1) is constitutional both as applied to Mr. Martinez and on its face. Further, the court determines that Mr. Martinez's Commerce Clause challenge is foreclosed by precedent. Accordingly, the court **denies** Defendant's Motion (Doc. 17).

**It is so ordered** this 16th day of October, 2024.

Sam A. Lindsay
United States District Judge